J-S49003-15
J-S49004-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN RE: ADOPTION OF C.F.C., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: J.C., JR., FATHER | No. 339 MDA 2015 |

Appeal from the Decree Entered January 21, 2015
In the Court of Common Pleas of York County
Orphans' Court at No(s): 2014-0086

| IN THE INTEREST OF: C.C., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: J.C., JR., FATHER | No. 365 MDA 2015 |

Appeal from the Order Entered January 22, 2015
In the Court of Common Pleas of York County
Juvenile Division at No(s): CP-67-DP-0000151-2013

BEFORE: BENDER, P.J.E., ALLEN, J., and OLSON, J.

MEMORANDUM BY BENDER, P.J.E.:                   **FILED SEPTEMBER 01, 2015**

J.C., Jr. ("Father"), appeals, in the case docketed at 339 MDA 2015,

from the decree entered on January 21, 2015, by the Court of Common

Pleas of York County, involuntarily terminating his parental rights to his son,

C.F.C., born in June of 2013. Father has also filed a second appeal, in the

case docketed at 365 MDA 2015, from the court's January 22, 2015 order

changing the goal for C.F.C. to adoption.[1]   Because these appeals are

---

[1] While the initials "C.F.C." are used in place of the minor's name in 339
MDA 2015, and the initials "C.C." are used in place of the minor's name in
365 MDA 2015, both cases involve the same child. We will use the initials
C.F.C. herein.

interrelated, we consolidate them herein. After careful review, we affirm both the January 21, 2015 decree terminating Father's parental rights, as well as the January 22, 2015 order changing the goal for C.F.C. to adoption.[2]

We note that Father was permitted by order of this Court to file one brief to address both of his appeals. In that brief, Father presents the following issue for our review:

> Whether the [t]rial [c]ourt erred in applying the test contained in *In re Adoption of S.P.*, 47 A.3d 817 (P[a.] 2012)[,] in terminating the parental rights of Father when he had utilized all available resources to maintain his relationship with his child during his incarceration, and his incarceration will conclude in a time frame that would allow him to parent his child[?]

Father's Brief at 5.

In the argument portion of his brief, Father focuses on challenging the court's termination of his parental rights, rather than the court's order changing the goal for C.F.C. to adoption. Thus, we review Father's appeal according to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court

_____

[2] C.F.C.'s mother, F.F.R.C. ("Mother"), executed a consent to the adoption of C.F.C. on April 24, 2014, which the trial court confirmed in the January 21, 2015 decree terminating Father's parental rights. Therefore, she is not a party to this appeal.

made an error of law or abused its discretion. *Id.*; *In re R.I.S.*, 36 A.3d [567,] 572 [(Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, 613 Pa. 371, 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, 575 Pa. 647, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id*.

As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, 539 Pa. 161, 650 A.2d 1064, 1066 (Pa. 1994).

*S.P.*, 47 A.3d at 826-827.

Termination of parental rights is governed by section 2511 of the

Adoption Act, which requires a bifurcated analysis.

Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the

- 3 -

needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S. § 2511; other citations omitted). The burden is upon the petitioner to prove by clear and convincing evidence the validity of the asserted statutory grounds for seeking the termination of parental rights. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). This Court must agree with only one subsection of 2511(a), in addition to section 2511(b), in order to affirm the termination of parental rights. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

In this case, the trial court concluded that the petitioning party, the York County Office of Children, Youth, and Families, provided clear and convincing evidence that Father's parental rights should be terminated pursuant to sections 2511(a)(1), (2), (5), and (8), as well as section 2511(b). Those provisions provide as follows:

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions

and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*\*\*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\*\*\*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\*\*\*

**(b) Other considerations**.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (2), (5), (8), (b).

With respect to section 2511(b), this Court has explained the requisite analysis as follows:

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In ***In re C.M.S.***, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. ***Id***. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. ***In re K.Z.S.***, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. ***Id***. at 63.

***In re Adoption of J.M.***, 991 A.2d 321, 324 (Pa. Super. 2010).

Here, Father, who is incarcerated, primarily contends that the trial court erred by focusing its decision to terminate his parental rights solely on the length of his remaining incarceration, rather than considering all the facts of the case. However, our review of the January 21, 2015 opinion by the Honorable Todd R. Platts of the Court of Common Pleas of York County convinces us that Judge Platts did, in fact, consider all of the relevant circumstances of Father's case, and did not terminate Father's parental rights based solely on the length of his remaining incarceration. Additionally, based on our examination of the certified record, the briefs of the parties, and the applicable law, we conclude that Judge Platts' thorough, well-reasoned opinion properly addresses the grounds for terminating Father's parental rights and changing the goal for C.F.C. to adoption.

Accordingly, we adopt Judge Platts' opinion as our own and affirm both the

January 21, 2015 decree terminating Father's parental rights, as well as the

January 22, 2015 order changing the goal for C.F.C. to adoption.

Decree and Order affirmed.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/1/2015

# IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| In the Interest of: | : | |
| C.F.C., | : | No. CP-67-DP-151-2013 |
| Minor Child | : | Change of Goal |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| In Re: Adoption of | : | |
| C.F.C., | : | No. 2014-0086 |
| Minor Child | : | Termination of Parental Rights |

**APPEARANCES:**

Martin Miller, Esquire
For York County Children and Youth Services

Sydney C.H. Benson, Esquire
Guardian ad Litem for Minor Child

Charles Hobbs, Esquire
For the Mother

Kathleen Prendergast, Esquire
For the Father

## ADJUDICATION

Before this Court are a Petition for Change of Goal, Petition to Confirm Consent to Adoption and Petition for Involuntary Termination of Parental Rights filed by York County Office of Children, Youth and Families ("Agency") on July 11, 2014, regarding C.F.C., whose date of birth is June ██ 2013.

An evidentiary hearing was held on December 17, 2014 addressing testimony and evidence relating to Mother and Father. The entire Dependency Record for minor child, C.F.C., docketed at CP-67-DP-151-2013, was incorporated into the hearing record.

1

Additionally, the Stipulation of Counsel filed December 12, 2014 was also incorporated into the hearing record for the child, along with Exhibits 1, 2, 3, 4, and 5 for the Agency. Father's Exhibit 1 was also incorporated as part of the hearing record. Based upon the testimony and evidence presented at the hearing, as well as the history of this case, the Petition for Change of Goal is GRANTED, the Petition for Involuntary Termination of Father's Parental Rights is GRANTED as to C.F.C., and the Consent to Adoption filed by Mother is CONFIRMED.

## FINDINGS OF FACT

1. C.F.C. (hereinafter "minor child") was born on June ■ 2013.

2. The natural mother of the minor child is ██████████████████ (hereinafter, "Mother") who currently resides at ████████████████, York, Pennsylvania 17403.

   *F.F.R.C.*

3. The Father of the minor child is ████████████, Jr. (hereinafter, "Father") who is currently incarcerated at FCI Allenwood Medium, ██████████████████████ ██ White Deer, Pennsylvania 17887.

   *J.C.*

4. The Agency received a referral in regard to the minor child on June ■, 2013.

5. The Agency filed an Application for Emergency Protective Custody on June 28, 2013. There were allegations that the minor child was born addicted to methadone and was experiencing withdrawal symptoms. At the time of delivery, Mother tested positive for cocaine and the whereabouts of Father were unknown.

2

6. In an Order dated July 8, 2013, the Shelter Care hearing was continued at the request of Father and the minor child was to continue in temporary legal and physical custody of the Agency.

7. The Agency filed a Dependency Petition on July 11, 2013.

8. A Dependency Hearing was subsequently scheduled and held on July 16, 2013.

9. The Court entered an Order on July 16, 2013, adjudicating the minor child dependent; legal and physical custody were awarded to the Agency and the minor child was placed in foster care. The Court ordered goal of reunification was established.

10. The minor child has remained dependent and outside of the care and custody of the Mother and Father since the filing of the Application for Emergency Protective Custody.

11. A Petition for Involuntary Termination of Parental Rights, a Petition to Confirm Consent to Adoption, a Consent by Parent of Adoptee, and a Petition for Hearing to Change Court Ordered Goal were filed by the Agency on June 11, 2014.

12. A Certification of Acknowledgement of Paternity was filed on June 19, 2014, and indicates there is not a claim or acknowledgement on file for the minor child.

13. Family Service Plans were prepared and dated as follows:

    a. Initial Family Service Plan dated July 24, 2013.

    b. Revised Family Service Plan dated December 5, 2013.

3

    c.   Revised Family Service Plan dated March 4, 2014.

    d.   Revised Family Service Plan dated May 6, 2014.

    e.   Revised Family Service Plan dated October 28, 2014.

14. In a Permanency Review Order dated December 5, 2013, the Court made certain findings and conclusions, including, but not limited to:

    a.   There had been no compliance with the Permanency Plan by the Mother and minimal compliance with the Permanency Plan by Father.

    b.   Reasonable efforts have been made by the Agency to finalize the Permanency Plan.

    c.   Mother had made no efforts towards alleviating the circumstances which necessitated the original placement and Father had made minimal efforts towards alleviating the circumstances which necessitated the original placement.

    d.   Legal and physical custody of the minor child was awarded to the Agency.

    e.   There continued to be a need for placement of the minor child outside the care and custody of the Mother and Father.

15. In a Permanency Review Order dated May 6, 2014, the court made certain findings and conclusions including, but not limited to:

    a.   There had been minimal compliance with the Permanency Plan by Father and minimal compliance with the Permanency Plan by Mother.

b. Reasonable efforts have been made by the Agency to finalize the Permanency Plan.

c. Father had made minimal efforts towards alleviating the circumstances which necessitated the original placement and Mother had made minimal efforts towards alleviating the circumstances which necessitated the original placement.

d. Legal and physical custody of the minor child was awarded to the Agency.

e. There continued to be a need for placement of the minor child outside the care of the Mother and Father.

16. In a Permanency Review Order dated October 28, 2014, the Court made certain findings and conclusions including, but not limited to:

a. There had been no compliance with the Permanency Plan by the Mother and minimal compliance with the Permanency Plan by the Father.

b. Reasonable efforts have been made by the Agency to finalize the Permanency Plan.

c. Mother made no efforts towards alleviating the circumstances which necessitated the original placement and Father had made no efforts towards alleviating the circumstances which necessitated the original placement.

d. Legal and physical custody of the minor was awarded to the Agency.

5

e.   There continued to be a need for placement of the minor child outside the care and custody of the Mother and Father.

17. Mother executed a Consent by Parent of Adoptee on April 24, 2014.

18. Mother executed the consent by Parent of Adoptee freely and voluntarily.

19. Mother executed the Consent by Parent of Adoptee knowingly and intelligently.

20. Mother executed the Consent by Parent of Adoptee without coercion or duress.

21. Mother was not intoxicated or under the influence of drugs when she executed the Consent by Parent of Adoptee.

22. No promises or conditions were made to Mother when she executed the Consent by Parent of Adoptee.

23. Mother has not revoked or withdrawn her Consent by Parent of Adoptee.

24. Mother requests the Court to confirm her Consent by Parent of Adoptee.

25. Mother was represented by counsel at the time she executed the Consent by Parent of Adoptee until December 12, 2014.

26. The minor child was evaluated by Early Intervention and no services were required, although he continues to be tracked.

27. Proper notice of the Change of Goal/Termination Hearing scheduled for December 17, 2014, was effectuated upon Mother and Father on October 28, 2014 and November 3, 2014, respectively. Mother was not present for the Hearing and Father participated via phone.

## DISCUSSION

### I.     Petition for Change of Goal

Before the Court can change the goal for a child in a juvenile dependency action, the Agency must prove by clear and convincing evidence that the change of goal would be in the child's best interest. In re Interest of M.B., 674 A.2d 702 (Pa. Super. 1996). In making a disposition, the Court should consider what is best suited to the protection and physical, mental, and moral welfare of the child. 42 Pa.C.S.A §6351; In re Davis, 502 Pa. 110, 121, 465 A.2d 614, 619 (1983). In rendering a disposition "best suited to the protection and physical, mental, and moral welfare of the child," the hearing court must take into account "any and all factors which bear upon the child's welfare and which can aid the court's necessarily imprecise prediction about that child's future well-being." In re Davis, 502 Pa. 110, 122, 465 A.2d 614, 620 (1983).

The purpose of the Juvenile Act is to preserve family unity and to provide for the care, protection, safety and wholesome mental and physical development of the child. 42 Pa.C.S.A. 6301(a)(1)-(1.1). The Juvenile Act was not intended to place children in a more perfect home; instead, the Act gives a court the authority to "intervene to ensure that parents meet certain legislatively determined *irreducible minimum standards* in executing their parental rights." In re J.W., 578 A.2d 952, 958 (Pa. Super. 1990) (emphasis added).

When a child is placed in foster care, the parents have an affirmative duty to make the changes in their lives that would allow them to become appropriate parents. In re Diaz,

7

669 A.2d 372, 377 (Pa. Super. 1995). A family service plan is created to help give the parents some guidelines as to the various areas that need to be improved. In the Interest of M.B., 565 A.2d 804, 806 (Pa. Super. 1989), app. Denied, 589 A.2d 692 (Pa. 1990). By assessing the parents' compliance and success with this family service plan, the Court can determine if the parents have fulfilled their affirmative duty. In re J.S.W., 651 A.2d 167, 170 (Pa. Super. 1994).

Under Section 6351 of the Adoption Act, the Agency has the burden to show a goal change would serve the child's best interests and the "safety, permanency, and well-being of the child must take precedence over all other considerations." In re D.P., 972 A.2d 1221, 1227 (Pa. Super. 2009), appeal denied, 973 A.2d 1007 (Pa. 2009). Thus, even where the parent makes earnest efforts, the "court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." In re Adoption of R.J.S., 901 A.2d 502, 513 (Pa. Super. 2006).

In the present case, the Agency has proven by clear and convincing evidence that it is in the child's best interest to change the goal to placement for adoption. Mother consented to adoption of the minor child on April 24, 2014. The minor child has been in placement for approximately eighteen (18) months. The minor child needs a permanent, safe and stable environment. Father has been incarcerated since the initiation of this Dependency proceeding and prior to minor child's birth. As a result, Father has only seen minor child twice at Court proceedings. Due to his incarceration, Father has not been able

to complete the overwhelming majority of goals set forth for him in the Family Service Plans as most of the goals are conditioned on Father's release from prison. However, Father has kept the Agency appraised of his changes in address and was able to complete a parenting course at York County Prison. Father requested visitation with the minor child but his request was denied by the Court due to the minor child's young age and York County Prison's policy, prior to this year, prohibiting contact visits for male prisoners. Due to Father's incarceration, Father has made minimal progress towards alleviating the circumstances which caused the minor child to be placed. Furthermore, Father does not have a home or job lined up for when he is released from prison.

Father's projected release date is scheduled for July 7, 2017. Testimony at the evidentiary hearing indicated that said release date already accounts for reduced sentence time in response to good behavior and assumes no misconduct going forward. Testimony also established that Father's original sentence of five (5) years incarceration was imposed on April 29, 2014.

Father testified that he has enrolled in a drug treatment program at FCI Allenwood Medium which could result in a sentence reduction of up to twelve (12) months. Additionally, Father testified that he may also receive up to a six (6) month reduction in his sentence for placement in a half-way house. Therefore, if Father continues in the drug treatment program and successfully completes said program he <u>may</u> receive <u>up to</u> twelve (12) months off of his sentence which would place his release date at July 7, 2016.

9

Additionally, Father's successful completion of the drug treatment program may allow him to be placed in a half-way house as early as January of 2016. However, the Court notes that these dates are speculative and conditioned on many factors and a best case scenario concerning Father's participation in the drug treatment program. Even if Father meets all of the requirements for this early release date, the minor child will be required to wait approximately another six (6) months to a year before beginning to form a close relationship with Father. The minor child would not be able to live with Father at the half-way house and Father would have to begin to establish a relationship with the minor child who will be approximately three (3) years old when Father finishes his placement in the half-way house under the best case scenario described above. The minor child will have no bond with Father and minimal recognition of him at that time.

Testimony established that Father has sent ten (10) letters and/or pictures to minor child through the foster family and six (6) letters to the Agency regarding the Dependency proceeding. However, contrary to the goal set for Father delineated in Family Service Plans dated October 28, 2014 and May 6, 2014 for Father to keep in contact with the caseworker **and express an interest in the minor child's well-being,** only four (4) of these correspondences over the past eighteen (18) months actually relate to the welfare of the minor child.

Overall the court finds that the minor child's best interest demands that the goal be changed from reunification with a parent to placement for adoption.

10

## II.    Petition for Involuntary Termination of Parental Rights

The Agency argues that Father's parental rights to the minor child should be terminated pursuant to 23 Pa.C.S. §2511(a)(1), (2), (5), and (8) of the Adoption Act. The Agency has the burden of establishing by clear and convincing evidence that statutory grounds exist to justify the involuntary termination of parental rights. In re Child M., 681 A.2d 793, 797 (Pa. Super. 1996). The clear and convincing standard means that the evidence presented by the Agency is so "clear, direct, weighty, and convincing" that one can "come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." Matter of Sylvester, 555 A.2d 1202, 1202-1204 (Pa. 1989). The Agency must also present evidence proving that the termination of parental rights will serve the child's best interests. In the Matter of Adoption of Charles E.D.M. II, 708 A.2d 88, 92-93 (Pa. 1998). To determine whether termination is within the best interest of the child, the court must examine the possible effect the termination would have on the child's needs and general welfare. In re Adoption of Godzak, 719 A.2d 365, 368 (1998).

### THE AGENCY HAS PROVEN BY CLEAR AND CONVINCING EVIDENCE THAT PARENTAL RIGHTS TO THE MINOR CHILD MUST BE TERMINATED PURSUANT TO 23 Pa.C.S. §2511(a)(1)

To terminate parental rights under 23 Pa.C.S. §2511(a)(1) of the Adoption Act, the Agency must establish, by clear and convincing evidence, that the parent has either demonstrated a settled purpose of relinquishing parental claim to a child or has failed to perform parental duties. In the Matter of Adoption of Charles E.D.M. III, 708 A.2d 88 (Pa.

11

1998). Once one of the two factors has been proven, the Court must examine the following three factors:

1.  Parent's explanation for the conduct;

2.  Post-abandonment contact between parent and child; and

3.  Effect of termination on child. *Id.*

The Agency has proven by clear and convincing evidence that Father has failed to perform any parental duties for the child. Father has been incarcerated since before the minor child's birth and has only seen the minor child twice at Court proceedings. As a result, Father has not performed any parental duties for minor child to date. The termination of Father's parental rights will have no immediate effect on the minor child because the child does not have a relationship with Father and the foster parents are the only mother and father the minor child has ever known. Testimony established that the minor child has a natural and loving relationship with the foster parents and is well-bonded to the family. The child does not currently have any bond with Father. The Court finds that the termination of Father's parental rights will provide a benefit to the minor child in that the child will achieve stability and permanency in a loving and safe home.

Therefore, for all the reasons stated above, the Agency has proven by clear and convincing evidence that termination of parental rights to the minor child is justified pursuant to Section 2511(a)(1) of the Adoption Act.

12

**THE AGENCY HAS PROVEN BY CLEAR AND CONVINCING EVIDENCE THAT PARENTAL RIGHTS TO THE MINOR CHILD MUST BE TERMINATED PURSUANT TO 23 Pa.C.S. §2511(a)(2), (5), and (8)**

The Agency has also proven by clear and convincing evidence that the parental rights to minor child should be terminated pursuant to 23 Pa.C.S. §2511(a)(2), (5), and (8) of the Adoption Act. The mandates of these sections are as follows:

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental wellbeing and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

(8) The child has been removed from the care of a parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

The Court finds that the conditions which led the child to placement outside the care and custody of Mother or Father continue to exist. Father has been incarcerated since before the minor child's birth and will not be able to make any substantial steps towards remedying the conditions until after his release. Even upon parole, Father would reside in a half-way house and would need to obtain housing, employment and transportation in addition to

13

parenting skills for the child. The child has been in placement for eighteen (18) months and is well-bonded to the foster family. The minor child has no bond with Father. According to Father's testimony and the testimony of Heidi Freese, Assistant Federal Public Defender, even if Father successfully completes the drug treatment program in which he has enrolled and receives the maximum reduction in his sentence for doing so, it will be approximately another eighteen (18) months from now until Father is discharged from a half-way house following his early release from prison. If Father does not successfully complete the drug treatment program, Father's earliest release date is expected to be July 7, 2017 when the minor child will be more than four (4) years of age.

Each termination of parental rights case involving incarcerated parents must be analyzed on its own facts, keeping in mind that the child's need for consistent parental care and stability cannot be put aside or put on hold simply because the parent is doing what he is supposed to do in prison. In re E.A.P., 944 A.2d 79 (Pa.Super. 2008). Testimony established that Father was able to complete a parenting course at York County Prison and has recently enrolled in a drug program at FCI Allenwood Medium. Testimony further established that Father sent the minor child letters and pictures but only vaguely inquired about the wellbeing of the minor child on just four (4) occasions over the child's past eighteen (18) months of placement. Since the minor child's birth, Father has failed to perform any parental duties. Due to Father's continued incarceration, Father is unable to provide the child with essential parental care, control or subsistence necessary for the child's

14

wellbeing. The earliest possible date Father could begin to perform even a minimal level of parental duties on behalf of the child is January of 2016 when Father could possibly be placed in a half-way house and when the child is approximately two and a half (2½) years old.

In consideration of this this testimony, the Court finds that the Agency clearly and convincingly established that termination of parental rights is justified pursuant to Sections 2511(a)(2), (5), and (8) of the Adoption Act.

## IN CONSIDERATION OF §2511(b), TERMINATION OF PARENTAL RIGHTS WOULD BEST SERVE THE NEEDS AND WELFARE OF THE MINOR CHILD

Having established the statutory grounds for the involuntary termination of the parental rights of Father, the Court's final consideration is whether termination of parental rights will best serve the developmental, physical and emotional needs and welfare of the child. 23 Pa.C.S. §2511(b).

> [T]he Court must carefully consider the tangible dimension, as well as the intangible dimension – the love, comfort, security, and closeness – entailed in a parent-child relationship. (citations omitted). The court must consider whether a bond exists between the child and [parent], and whether termination would destroy an existing beneficial relationship. In re: B.N.M., 856 A.2d 847 (Pa. Super. 2004).

The Court has thoroughly evaluated the minor child's relationships in this matter. The Court finds that the child has no bond with Father and, as a result, the termination of Father's parental rights will have no immediate effect on the minor child. The Court also finds that the bond between the minor child and foster parents is strong and healthy. At this point, the child recognizes the foster parents as his "mother" and "father" and has sibling

15

relationships with the foster parents' other children. The bond that the minor child has with his foster family can provide safety, security and permanency for the child. Termination of parental rights will best meet the needs of the child and permit the child to achieve the stability that he deserves.

## CONCLUSIONS OF LAW

1.  The current placement of C.F.C. continues to be necessary and appropriate. 42 Pa.C.S. §6351(f)(1).

2.  Father has not been able to meet the goals set forth in the family service plans due to his incarceration. 42 Pa.C.S. §6351(f)(2).

3.  The circumstances which necessitated the child's original placement have not been alleviated. 42 Pa.C.S. §6351(f)(3).

4.  The current goal for the child of reunification with a parent is no longer feasible and appropriate because Father has failed to meet the irreducible minimum requirements necessary to parent the child. 42 Pa.C.S. §6351(f)(4).

5.  The minor child's best interests demand that the current goal of reunification with a parent be changed to placement for adoption.

6.  Father has failed to perform parental duties for a period well in excess of six (6) months. 23 Pa.C.S. §2511(a)(1).

7.  The Agency has established by clear and convincing evidence that the incapacity of Father has caused the child to be without parental care, control or subsistence

16

necessary for his physical or mental well-being and the condition and causes of the incapacity cannot be remedied by Father. 23 Pa.C.S. §2511(a)(2).

8. The Agency has established by clear and convincing evidence that the child was removed from the care of the parent for a period in excess of twelve (12) months and has never been returned to the parent's care. The conditions which led to the child's removal from the parents care continue to exist and Father cannot remedy these conditions within a reasonable time. 23 Pa.C.S. §2511(a)(5) and (8).

9. The Consent to Adoption executed by Mother was freely and voluntarily, knowingly and intelligently given and has not been revoked.

## SUMMARY

The Court humbly acknowledges that Mother's decision to consent to the Adoption of C.F.C. was a difficult decision to reach. The Court fully appreciates Mother's desire and commitment to putting C.F.C.'s best interests first and foremost in making said decision. Additionally, while the Court fully sympathizes with Father's opposition to his parental rights being terminated for C.F.C., the Court believes said action is clearly in the best interests of the minor child to promote his welfare and allow him to achieve permanency. The Court is therefore executing a Decree terminating Father's parental rights with respect to C.F.C. and an Order directing that the current goal of reunification with parent or guardian for C.F.C. is changed to placement for adoption. Said Order also establishes the concurrent goal for C.F.C. to be placement with a legal custodian.

17

Circulated 08/26/2015 03:21 PM

Dated: January 20, 2015

BY THE COURT,

TODD R. PLATTS, JUDG

18